UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

MICHAEL WHEATLEY as Trustee for the                                    PLAINTIFF
Bankruptcy Estate of Shirley W. Rehm

and

SHIRLEY W. REHM

v.                                                    CIVIL ACTION NO. 3:04-CV726-S

J.J.B. HILLIARD, W.L. LYONS, INC.                                    DEFENDANT

## MEMORANDUM OPINION

This matter is before the court on the motion for summary judgment by the defendant, J.J.B. Hilliard, W.L. Lyons, Inc. ("Hilliard Lyons"). This case involves the plaintiff's claims of employment discrimination under the Kentucky Civil Rights Act ("KCRA"), Chapter 344 and a claim for interference with the plaintiff's rights under the Family Medical Leave Act (29 U.S.C. §2601, *et. seq.*). For the reasons set forth below, the court will grant the defendant's motion for summary judgment.

FACTS

On June 20, 1990, Hilliard Lyons hired the plaintiff, Shirley W. Rehm ("Rehm"), as an administrative assistant in its Human Resources ("HR") Department. She continued working at Hilliard Lyons until she was terminated in October of 2002. Rehm was age 52 when she was hired and 65 when she was fired. Rehm started working in HR and then transferred to the Building Department where Bob Weiss ("Weiss") was her manager. After several years there, Rehm returned

1

to HR.  Marilyn Underwood Riley ("Riley") and Ruth Bellinger ("Bellinger") were her supervisors from the time she returned to HR in December of 2001 until her termination.

Throughout her tenure at Hilliard Lyons, Rehm had a record of attendance problems.  In her performance appraisals, she received high marks in most categories.  Absenteeism, however, was often her lowest area.  Weiss and Bellinger expressed dissatisfaction with her attendance.

In February of 2001, Rehm's adult son was diagnosed with cancer and he passed away in July of 2002.  Throughout his illness and after his death, Rehm became quite depressed.[1]  During this time period, she was under the care of her internist, Dr. Steve Burton.  Subsequent to her discharge from Hilliard Lyons, Rehm began therapy with a psychologist as well.

In 2002, Rehm far exceeded the amount of "unscheduled absences" permitted under Hilliard Lyons' policy manual.  She routinely called in to report her absences as required under company policy.  She provided various reasons for these absences. Pursuant to Hilliard Lyons' policy procedures, Rehm was "counseled" several times regarding her absenteeism and she also received two final written notices.  Nonetheless, her attendance did not improve.  She called in sick in October of 2002 explaining that Dr. Burton believed she was suffering from depression.  In accordance with the written warnings given to Rehm, Hilliard Lyons discharged her when she indicated that she would not be in for work on October 15th, 2002.  Rehm has now filed suit against Hilliard Lyons alleging that it discriminated against her because of her age and disability when it discharged her.  She also makes a claim for interference with her rights under FMLA.  The defendant has made a motion for summary judgment on all claims.

---

[1] She had been receiving treatment off and on for depression since the early or mid 1990's.

STANDARD OF REVIEW

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 (c). The moving party bears the burden of establishing these elements *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Not every factual dispute between the parties prevents summary judgment. *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987). To preclude summary judgment, the disputed facts must be material, such that "they might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The dispute must also be genuine, such that "if the facts were proven at trial, a reasonable jury could return a verdict for the non-moving party." *Id.* "The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *60 Ivy Street Corp.*, 822 F.2d at 1435. In making these determinations, the court views all facts and inferences in a light most favorable to the nonmoving party. *Id.*

DISCUSSION

A. Age Discrimination Claim

Rehm asserts several claims in her complaint. First, she claims that Hilliard Lyons fired her because of her age in violation of KRS 344.040. She also claims that Hilliard Lyons denied her an interview and the position of secretary in the Municipal Bond Department. Amended Complaint (DN

1), ¶ 19.  In her Response, Rehm does not argue this as a separate age discrimination claim.[2]  Rather, she seems to use these factual allegations as evidence related to the claim that she was ultimately terminated from her position in HR because of her age.  Plaintiff's Response (DN 36), p. 18.   When she applied for the position in the Municipal Bond Department, Rehm had a discussion with Tammy Stuart, a non-supervisory employee who worked as a Public Finance Associate in that department.  Defendant's Exhibit F, England Dec., ¶ 4. Sam Conner, the manager for whom Rehm would have worked, thought that Stuart could best explain the relevant job duties.  Rehm Depo., pp. 46-48.

Rehm contends that Stuart "asked [Rehm] how long [she] was going to be with the company, and [Rehm] said, well, probably, you know, for quite awhile, or until [she] win[s] the Lottery." Rehm Depo., p. 46. Rehm "took this inquiry as one related to her age." Plaintiff's Response (DN 36), p. 18. Rehm, who was aware that Hilliard Lyons had been downsizing, apparently drew a discriminatory inference from that statement. It is well established that "isolated and ambiguous comments" do not adequately support a finding of discrimination. *Phelps v. Yale, Sec., Inc.,* 986 F.2d 1020, 1025-26, (6th Cir. 1993).  *See also Hallahan v. The Courier Journal*, 138 S.W.3d 699, 710 (Ky. Ct. App. 2004) ("[D]irect evidence does not include stray remarks in the workplace, statements by decision-makers unrelated to the decisional process itself, or statements by nondecision-makers.").  Accordingly, Stuart's statements are insufficient to directly establish discrimination.

In the absence of direct evidence, however, Rehm may rely upon the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668

---

[2] To the extent that the Amended Complaint alleges an age discrimination claim for refusing to interview or hire Rehm for the position in the Municipal Bonds Department, Rehm has entirely failed to establish her *prima facie* case.  The parties offer no argument regarding whether Rehm was qualified for that position.  Rehm has not identified who actually received that position and if the person was younger than Rehm. Rehm has simply not produced enough evidence to support such claim.

(1973).  "Kentucky courts apply the *McDonnell Douglas* framework to discrimination cases brought under state law."  *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802, fn. 8 (6th Cir. 1994). Under this model, Rehm must first show that she was (1) a member of a protected class (2) subjected to an adverse employment action; (3) qualified for her position; and (4) treated differently than similarly situated employees for the same or similar conduct; or, in the case of a termination, that she was replaced by someone who was not a member of the protected class. *See, e.g., Kocsis v. Multi-Care Management, Inc.,* 97 F.3d 876, 882-83 (6th Cir. 1996).  Then the burden of production would shift to Hilliard Lyons to provide a legitimate, nondiscriminatory reason for its action.  *McDonnell Douglas,* 411 U.S. at 802. The ultimate burden of persuasion rests with Rehm to establish that Hilliard Lyons' proffered reason was merely pretext for discrimination. *See Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed. 207 (1981).

The parties do not dispute the first two elements of the *prima facie* case. Rehm was 65 at the time of her termination and thus falls within a protected class.[3]  Hilliard Lyons also admits that it terminated Rehm, which clearly qualifies as an adverse employment action. Hilliard Lyons does dispute, however, the remaining two elements of Rehm's *prima facie* case.

First, Hilliard Lyons contends that Rehm was not qualified for her position.  Hilliard Lyons submits that Rehm "cannot plausibly refute that good attendance was an essential function of her receptionist job in the HR Department." Defendant's Motion for Summary Judgment (DN 33), pp. 5-6. Hilliard Lyons' proffered reason for firing Rehm is her poor attendance, which is the same reason it gives for its assertion that she was not qualified for her position.  However,

---

[3] "In age discrimination cases, the protected class includes all workers at least 40 years old and the fourth element is modified to require replacement not by a person outside the protected class, but merely replacement by a significantly younger person." *Grosjean v. First Energy Corp.,* 349 F.3d 332, 336 (6th Cir. 2003),

> a court may not consider the employer's alleged nondiscriminatory reason for taking
> an adverse employment action when analyzing the *prima facie* case. To do so would
> bypass the burden-shifting analysis and deprive the plaintiff of the opportunity to
> show that the nondiscriminatory reason was in actuality a pretext designed to mask
> discrimination.

*Wexler v. White's Fine Furniture, Inc.,* 317 F.3d 564, 575 (6th Cir. 2003).  Accordingly, we reject the

defendant's assertion that Rehm was not qualified because of her attendance record.

Hilliard Lyons also contends that Rehm failed to establish the final element of her *prima facie*

case, namely that she was replaced by a younger employee.  Rehm was replaced by Daniel McIntyre,

an employee who Riley estimated to be in his mid to late thirties at the time.  Riley Depo., p. 65-66.

To establish the final element of her *prima facie* case, Rehm must establish that she was replaced by

someone "substantially younger" than herself.  *O'Connor v. Consolidated Coin Caterers Corp*., 517

U.S. 308, 116 S.Ct. 1307, 134 L.Ed.2d 433.  The Sixth Circuit Court of Appeals has adopted a bright

line rule that "an age difference of six years or less . . . is not significant" and has held that "eight years

can be a significant difference."  *Grosjean v First Energy Corp.,* 349 F.3d 332, 340 (6th Cir. 2003).

At the time of her termination, Rehm was 65 and, according to Riley's estimation, her replacement was

25-30 years her junior.   This difference is more than four times that which the Sixth Circuit has found

sufficient.  Hilliard Lyons does not dispute the accuracy of Riley's estimate and fails to produce

evidence of McIntyre's actual age.  Taken in the light most favorable to Rehm, Riley's deposition

testimony suffices to establish that McIntyre was significantly younger than Rehm. *See 60 Ivy Street

Corp.*, 822 F.2d at 1435 ("The disputed issue does not have to be resolved conclusively in favor of

the non-moving party, but that party is required to present some significant probative evidence which

makes it necessary to resolve the parties' differing versions of the dispute at trial.").  Therefore, we

conclude that Rehm has met her initial burden.

The burden now shifts to Hilliard Lyons to proffer a legitimate, nondiscriminatory reason for discharging Rehm. Hilliard Lyons has identified Rehm's excessive absenteeism as grounds for her dismissal. Defendant's Reply (DN 38), pp. 6-7. Specifically, between January of 2002 and October of 2002, Rehm had thirteen unscheduled absences, which the policy defines to include sick days. Defendant's Exhibit C, p. 28. This number far exceeded the number of absences permitted under Hilliard Lyons' attendance policy. That policy expressly stated that two unscheduled absences in a rolling 12-month period could result in counseling, three in a written warning, four in a final written warning and five in termination. *Id.* at pp. 28-29. It is undisputed that Rehm received several counselings and two final written warnings before she was ultimately discharged on October 15, 2002. Defendant's Exhibits L, M, N, O, Q. Both of her final written warnings indicated that subsequent unscheduled absences could result in termination. Defendant's Exhibits N, Q. Her second final written warning was dated on October 4, 2002. Despite this warning, she was absent on October 14, 2002 and was discharged the following day. Defendant's Exhibit R. Hilliard Lyons' has satisfied its burden in offering a legitimate, nondiscriminatory reason for terminating Rehm.

The final burden rests with Rehm to establish sufficient evidence from which a jury could reasonably conclude that Hilliard Lyons' purported reason is merely pretext for discrimination. *See Burdine*, 450 U.S. at 255-56. Rehm can meet her burden by establishing: "(1) that the proffered reasons had no basis *in fact*, (2) that the proffered reasons did not *actually* motivate [her] discharge, or (3) that they were *insufficient* to motivate discharge." *Manzer v. Diamond Shamrock Chemicals Co.,* 29 F.3d 1078, 1084 (6th Cir. 1994) (emphasis in original and citations omitted). As discussed above, there is no dispute regarding Rehm's actual attendance record. She exceeded the number of permitted absences and she received counseling and warnings regarding her attendance record. The Hilliard Lyons' policy expressly stated that poor attendance may result in discharge. As these facts are

undisputed, Rehm cannot establish that Hilliard Lyons' proffered reason had no basis in fact or that it was insufficient to motivate the discharge. Instead, she relies upon the second way to establish pretext, arguing that her absenteeism did not actually motivate her discharge. Plaintiff's Response (DN 36), p. 26.

Rehm argues that Hilliard Lyons' attendance policy is internally inconsistent because it allows employees to acquire sick days, but provides that employees can be counseled and even discharged for a certain number of "unscheduled absences." Rehm notes that a person cannot "schedule" when she will be sick and that the policy makes the sick days essentially worthless. Furthermore, she contends that the policy was applied inconsistently, noting that another employee, Yvonne Bates, was counseled several times for absenteeism but was not discharged. *See id.* Rehm fails to mention, however, an important distinction between the situations: Riley indicated that Bates improved upon her attendance after these counselings, whereas Rehm continued to miss work. Riley Depo., p.101.

In any event, Rehm's argument that the policy is nonsensical and that it was applied inconsistently is not relevant to issue at bar. The law requires "that an employer not discriminate against an employee on the basis of the employee's protected class characteristics." *Kendrick v. Penske Transportation Services, Inc.,* 220 F.3d 1220 (10th Cir. 2000). Rehm is required to show that Hilliard Lyons' purported legitimate reason somehow camouflages an unlawful employment action taken against her. "The soundness of an employer's business judgment may not be questioned as a means of showing pretext." *Chappell v. GTE Products Corp.*, 803 F.2d 261 (6th Cir. 1986). "The plaintiff[] may not simply substitute [her] own business judgment for that of the defendant." *Rowan v. Lockheed Martin Energy Systems, Inc.,* 369 F.3d 544, 550 (6th Cir. 2004). Furthermore, employment statutes such as KRS Ch. 344, do

8

> *not* make unexplained differences in treatment per se illegal nor [do they] make inconsistent or irrational employment practices illegal. [They] prohibit only intentional discrimination *based upon* an employee's protected class characteristics. . . . Large employers must deal with a multitude of employment decisions . . . that will inevitably differ even among seemingly similar situations.

*Kendrick*, 220 F.3d at 1232 (emphasis in original).  "The record in this case is devoid of evidence permitting an inference that age was a determining factor" in Rehm's discharge. *Chappell*, 803 F.2d at 268.  On the contrary, the record shows that Rehm was fired for sound reasons; namely, her excessive absenteeism.  Rehm has not carried her burden in establishing that Hilliard Lyons' legitimate business reason did not actually motivate its decision to terminate her or that it masked any underlying discriminatory animus.  Accordingly, we will grant the defendant's motion for summary judgment on the age discrimination claim.

B. Disability Discrimination Claim

Rehm also asserts that she was fired because of her disability, in violation of KRS 344.040(1). "Given similar language and the stated purpose of KRS Chapter 344 to embody the federal civil rights statutes, including the Americans with Disabilities Act (ADA), this court may look to federal case law in interpreting the Kentucky Civil Rights Act with respect to [a plaintiff's] claim of disability discrimination under KRS 344.040." *Hallahan v. The Courier Journal*, 138 S.W.3d 699, 705-706 (Ky. App. 2004).  Thus, just as with Rehm's age discrimination claim, the court will proceed under the applicable *McDonnell Douglas* burden-shifting framework in the absence of direct evidence of discrimination.  To meet her initial burden, Rehm must establish the elements of the requisite *prima facie* case; she must prove that she (1) is disabled within the meaning of the KCRA; (2) is otherwise qualified to perform the duties of her position, with or without reasonable accommodation; (3) was subjected to an adverse employment action; and (4) was treated differently than similarly situated

employees for the same or similar conduct.  *See, e.g., Kocsis v. Multi-Care Management, Inc.,* 97 F.3d 876, 882-83 (6th Cir. 1996).

Under the KCRA, a person is disabled who (1) has a physical or mental impairment that substantially limits one or more major life activities, (2) has a record of such an impairment or (3) is regarded as having such an impairment.  KRS 344.010(4); *See also* 42 U.S.C. §12102(2). Rehm identifies her disability as depression.  She explains that she suffered from this mental illness when her son was diagnosed with cancer and that the depression became more severe during the course of his illness and after his death. Plaintiff's Response (DN 36), p. 8.  She notes that she was being treated by a medical professional and Hilliard Lyons does not appear to dispute the existence of her condition. However, determining whether a physical or mental impairment exists is only the first step in determining whether an individual is disabled.  Many impairments do not impact an individual's life to the degree that they constitute disabling impairments. *See, e.g, Toyota Motor Mfg., Ky., Inc. v. Williams,* 534 U.S. 184, 122 S.Ct. 681, 691, 151 L.Ed.2d 615 (2002) ("It is insufficient for individuals attempting to prove disability status under this test to merely submit evidence of a medical diagnosis of an impairment.").

To qualify as disabling, the impairment must substantially limit one or more major life activities.  As an initial matter, it is necessary to understand what is meant by the terms "major life activities" and "substantially limit."  The EEOC regulations shed light on this: "'major life activities' means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. §1630.2(i). Furthermore, the term "'substantially limits' means . . . unable to perform a major life activity that the average person in the general population can perform . . ." 29 C.F.R. §1630.2(j)(1)(i). Rehm has acknowledged that she was able to work, care for herself and perform all the major life activities about which she was questioned.

Rehm Depo., pp. 70-71. Rehm has not identified any major life activity in which she is substantially limited. In fact, she argues that "it does not matter that she could perform various major life functions." Plaintiff's Response (DN 36), p. 32. Citing an Eleventh Circuit Court of Appeals case, Rehm contends that she "is not required to prove that she was actually disabled in order to state a *prima* [sic] *facie* case of discrimination." *Id.* (citing *Williams v. Motorola Inc.*, 303 F.3d 1284, 1290 (11th Cir. 2002)). The *Williams* court held that a plaintiff may maintain an age discrimination claim without proof of actually being disabled if the employer perceived the plaintiff as being disabled. *Williams,* 303 F.3d at 1290. In making this argument, Rehm seems to rely upon the third way in which a person can be "disabled" within the meaning of the KCRA; that is she argues that she was "regarded as" being disabled.[4]

> There are two apparent ways in which individuals may fall within this statutory definition: (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities. In both cases, it is necessary that a covered entity entertain misperceptions about the individual - it must believe either that one has a substantially limiting impairment that ones does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting.

*Moorer v. Baptist Memorial Health Care Sys.*, 398 F.3d 469, 479 (6th Cir. 2005). This analysis is appropriately divided into two parts: "first, whether [Hilliard Lyons] regarded [Rehm] as having a

---

[4] Rehm asserts both that she "was disabled" within the meaning of the KCRA and that she was also regarded as being disabled by Hilliard Lyons. Plaintiff's Response (DN 36), p. 32. To the extent that she claims to have a disability within the meaning of KRS §344,010(4)(a), her claim fails on its face. The language unequivocally requires a substantial limitation in a major life activity. Thus, the fact that Rehm is unable to identify the major life activity in which she is substantially limited is actually of significant import. Absent any evidence that she is so limited, Rehm has failed to prove that she is disabled within the meaning of KRS §344,010(4)(a). Whether Hilliard Lyons "regarded her as" being disabled, however, is a separate inquiry.

physical or mental impairment, and second, whether [Hilliard Lyons] mistakenly regarded that impairment as substantially limiting" a major life activity.  *See id.*

Rehm had a history of chronic absenteeism.  From January 1, 2002 until her termination date on October 15, 2002, she had at least thirteen unscheduled absences.  *See* Plaintiff's Exhibit P.  Ruth Bellinger, one of Rehm's supervisors, kept Rehm's attendance record and noted the reasons Rehm provided for her absences. There were various reasons, but only the final entries mention "depression."  Apparently, Rehm told Bellinger that she had been diagnosed with depression. Viewed in the light most favorable to Rehm, it appears that Hilliard Lyons was on notice of her mental impairment at this time. The record contains insufficient evidence, however, to conclude that Hilliard Lyons mistakenly regarded her depression as substantially limiting a major life activity.  On the contrary, Hilliard Lyons documented several counselings and warnings given to Rehm regarding her absenteeism.  The paperwork does not reveal that Hilliard Lyons believed Rehm incapable of performing her duties when she was at work.  Rehm never requested any accommodation or identified any specific work limitations during her meetings with her supervisors.  Riley indicated that Rehm did not exhibit signs of depression at work.  Riley Depo., p. 40.  Rehm has not produced any probative evidence from which to draw the conclusion that Hilliard Lyons believed her to be substantially limited in a major life activity.  Therefore, she has failed to establish the first element of her *prima facie* case: that she is disabled within the meaning of the KCRA.

The second element requires Rehm to establish that she was otherwise qualified to perform her job duties.  As discussed in the previous section, we conclude that she was qualified for her position and reject Hilliard Lyons' argument that her absenteeism makes her unqualified. There is no dispute as to the third element; Rehm suffered an adverse employment action when she was terminated.  The final element of her *prima facie* case requires that she establish that similarly situated

persons were treated differently for similar conduct.  As discussed above, she has not established this element.  She argues that Yvonne Bates, who also had absentee problems, was not terminated. However, Bates corrected her absenteeism while Rehm - even after her second final written warning - did not. Rehm has failed to establish each required element of her *prima facie* case.

Even *assuming arguendo* that she had satisfied her initial burden, the burden would merely shift to Hilliard Lyons to provide a legitimate, nondiscriminatory reason for terminating her and Rehm would carry the ultimate burden of proving that reason was pretext for disability discrimination. As discussed in the age discrimination section above, Hilliard Lyons provided the legitimate reason of excessive absenteeism and Rehm failed to show that this proffered reason camouflaged any underlying discriminatory animus. Accordingly, we will grant the defendant's motion for summary judgment on the disability discrimination claim as well.

### C. Violation of Family and Medical Leave Act Claim

Rehm claims that Hilliard Lyons interfered with her rights under the Family Medical Leave Act ("FMLA") when it terminated her on October 15, 2002. Rehm first asserted this claim in her amended complaint, which was filed on November 30, 2004 (more than twenty-five months after her termination date). Hilliard Lyons contends that this claim is time-barred because the statute of limitations for any violation of FMLA is two years. 29 U.S.C. § 2617(c)(1). Rehm correctly responds, however, that her claim is still viable because it relates back to the date of her original complaint, which was filed in November of 2003.  This date is well within the two year time frame identified by Hilliard Lyons, who calculates the latest possible deadline as October 15, 2004 (two years after the date of her termination).

Federal Rule of Civil Procedure 15(c) provides in pertinent part: " An amendment of a pleading relates back to the date of the original pleading when . . . (2) the claim or defense asserted

13

in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted

to be set forth in the original pleading . . ."

> The rule is based on the notion that once litigation involving particular conduct or
> a given transaction or occurrence has been instituted, the parties are not entitled to
> the protection of the statute of limitations against the later assertion by amendment
> of defenses or claims that arise out of the same conduct, transaction, or occurrence
> as set forth in the original pleading.

*Brown v. Shaner*, 172 F.3d 972, 932 (6th Cir. 1999).  Rule 15 is motivated by the principle that cases

"should be tried on their merits rather than the technicalities of pleadings.  Thus, a court will permit

a party to add even a new legal theory in an amended pleading as long as it arises out of the same

transaction or occurrence." *Miller v. American Heavy Lift Shipping*, 231 F.3d 242, 248 (6th Cir. 2000)

(citations omitted). That is precisely what Rehm does in the case at bar.  Her claim for violation of

her rights under FMLA arises from the same transaction or occurrence as do her discrimination

claims.  All of her claims stem from her termination; she claims it was both an act of discrimination

and an interference with her FMLA rights.  Accordingly, her FMLA claim was timely filed and we

will proceed with a discussion of the merits.

To establish a claim of interference with her FMLA rights, Rehm must demonstrate the

following elements of her *prima facie* case: (1) she was an eligible employee pursuant to 29 U.S.C.

§2611(2); (2) Hilliard Lyons qualified as an employer under 29 U.S.C. §2611(4); (3) she was entitled

to leave under 29 U.S.C. §2612(a)(1) ; (4) she gave Hilliard Lyons notice of her termination to take

leave in accordance with 29 U.S.C. §2612(e)(1) ; and (5) Hilliard Lyons denied her FMLA benefits

to which she was entitled.  *Cavin v. Honda of America Mfg., Inc.,* 346 F.3d 713, 719 (6th Cir. 2003).

There is no dispute that Rehm was an eligible employee or that Hilliard Lyons was an employer for

purposes of the act. Hilliard Lyons does dispute, however, the final three elements of Rehm's *prima*

*facie* case.

14

First, Hilliard Lyons claims that Rehm was not entitled to leave. FMLA entitles employees to twelve weeks of unpaid leave annually if the employee has "a serious health condition that makes the employee unable to perform the functions of the positions of such employee." 29 U.S.C. §2612(a)(1)(D). Sometime after August 22, 2002, Rehm told Hilliard Lyons that her treating physician, Dr. Steve Burton, had diagnosed her with depression.[5] The Seventh Circuit Court of Appeals has stated that depression may qualify as a serious health condition under FMLA. *See Collins v. NTN-Bower Corp*., 272 F.3d 1006 (7th Cir. 2001). However, Rehm's depression does not satisfy the standard set forth in 29 U.S.C. §2612(a)(1)(D); that is, there is no evidence it rendered her unable to perform her job duties. In fact, Dr. Burton stated in writing that Rehm was able to work full-time as of October 2, 2002. *See* Defendant's Exhibit S. She was discharged less than two weeks after this date. Her last two performance appraisals, both of which covered periods of time subsequent to the her son's cancer diagnosis, indicated that she was able to perform her job duties. She received ratings of "good," "very good," or "outstanding," in all categories except for attendance. *See* Plaintiff's Exhibits G, E. Rehm has not met her burden in establishing that she was unable to perform the functions of her position, as required by the relevant FMLA language.

Even *assuming arguendo* that she did qualify for leave under FMLA, Rehm failed to notify Hilliard Lyons of her intention to take leave. It is undisputed that Rehm never actually requested leave of any kind after her son's death. Moreover, Rehm who was a long-time employee of Hilliard Lyons, worked in the HR department. She acknowledged familiarity with the attendance policy and

---

[5] We note, however, that the first "confirmed diagnosis of severe depression" identified by Rehm occurred in December of 2002, two months after she was discharged. In that paperwork, Dr. Burton indicates that she has been under his care for major depression since 1996. Plaintiff's Response (DN 36), p. 9.

specifically with FMLA. Rehm Depo., pp. 28, 32-33. She had taken leave under FMLA due to a shoulder injury in early 2000. *Id.* at 32.

While the employee is not required to expressly assert rights under FMLA, she must state that leave is needed. 29 C.F.R. §825.303(b). The Sixth Circuit Court of Appeals has held that "[a]n employee need not specifically mention the FMLA when taking leave - all the employee must do is notify the employer that FMLA-qualifying leave is needed." *Chandler v. Specialty Tires of America (Tenn.)*, 283 F.3d 818, 825 (6th Cir. 2002). Rehm never told anyone that she needed leave. Rehm Depo., p. 32,40, 55.

Rehm cites an opinion in which the Eighth Circuit Court of Appeals found that an employer was on notice of an employee's request for leave. *See Spangler v. Federal Home Loan Bank of Des Moines*, 278 F.3d 847 (8th Cir. 2002). That employer - specifically, several different supervisors - had knowledge of the employee's history of depression and her need for leave in the past. Furthermore, the employee expressed a "need for time off due to 'depression again'" on the day before she was discharged. *Id.* at 852. Rehm has not produced enough evidence to support the same conclusion. First, she lacks any evidence that Hilliard Lyons knew and appreciated the extent of her depression.[6] She provided no doctor's notes or recommendations for time off. Second, Rehm never requested any time off; instead, she called in sick sporadically with each absence being attributed to a different reason. *See* Plaintiff's Exhibit P. Lastly, she never indicated that her depression precluded her from working. On the contrary, her treating physician indicated that she was able to work full-

---

[6] Her supervisors did not attribute all of her attendance problems to her son's illness and eventual death. They were uncertain if her absenteeism was related to grief over her son's illness and death, clinical depression or some general unhappiness with the HR department. *See* Riley Depo., pp. 39-40, 42-43, 44; Bellinger Depo., pp. 48, 62-64. Rehm gave various, seemingly unrelated reasons for her absences. *See* Plaintiff's Exhibit P.

16

time. Defendant's Exhibit S.  It would defy logic to conclude that an employer was on notice that an employee needed leave time when that employee's treating physician submitted a note indicating that she was able to work full-time with no restrictions.   Accordingly, we conclude that Rehm never provided Hilliard Lyons with the requisite notice.   As Rehm was not entitled to benefits and did not notify Hilliard Lyons of her intention to take leave under FMLA, there can be no denial of benefits to which she was entitled.  We will grant the defendant's motion for summary judgment on this claim as well.

For the reasons set forth above, the court will grant the defendant's motion for summary judgment on all claims in this case.  A separate order will be entered herein this date in accordance with this opinion.

cc: Counsel of Record